**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | AMY CHRISTINE DONAGHY, | : | Chapter 13 |
| | | : | |
| | Debtor. | : | Bky. No. 18-15459 ELF |
| | | : | |

# **M E M O R A N D U M**

## **I. INTRODUCTION**

Presently before the court is the motion for relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) ("the Motion"), filed by HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-7 ("HSBC"). HSBC seeks relief in order to resume foreclosure proceedings against the Debtor's residential real property, 3 East Spring Oak Circle, Media, PA ("the Property").

The Debtor's sole defense to the Motion is based on what she describes as HSBC's "inconsistent and contrary averments of possession of the note [that] raise a genuine issue of fact regarding that creditor's standing to seek relief from automatic stay." (Debtor's Memorandum at 2).

In support of its standing to prosecute the Motion, HSBC points to the pre-petition judgment in mortgage foreclosure that it holds against the Debtor and the Property.

For the reasons stated below, I conclude that HSBC has standing. The Motion will be granted.

## II. PROCEDURAL AND FACTUAL BACKGROUND

**A.**

The Debtor commenced this bankruptcy case by filing a petition under chapter 13 of the Bankruptcy Code on August 17, 2018. She filed her bankruptcy schedules on September 20, 2019 and a chapter 13 plan on September 21, 2018.

The Debtor's Schedule D, filed on September 20, 2018, referred to the holder of the mortgage on the Property as "Wells Fargo Home Mortgage."

In her chapter 13 plan, rather than invoking any of the Code-based methods available for treating a secured claim in a chapter 13 plan,[1] the Debtor proposed to address the Wells Fargo

---

[1] The Code provides three (3) express mechanisms for treating a secured claim in a chapter 13 case: curing a prepetition default, paying off the entire balance of the claim, or surrendering the property that secures the claim. See 11 U.S.C. §§ 1322(b)(5), 1325(a)(5)(B), (C). It is also possible for a plan simply to "not provide" for a secured claim. See, e.g., In re Stuart, 402 B.R. 111, 123 (Bankr. E.D. Pa. 2009).

A leading treatise describes the options somewhat differently, stating that there are five (5) ways to treat an allowed secured claim in a chapter 13 plan:

1. surrendering the collateral to the creditor in satisfaction of the allowed secured claim;

2. providing that the creditor retains its lien and receives payments during the plan that have a present value not less than the allowed amount of the secured claim;

3. curing a default and complete contract payments during the plan;

4. curing a default and maintain payments if the last payment on the claim is due after the last payment under the plan;

5. convincing the creditor to accept some other treatment.

Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy,, § 101.1, at ¶ [1] (4th ed. Oct. 5, 2010), www.Ch13online.com.

claim by pursuing a loan modification.[2] The plan also stated:

> If the modification is not approved by 11/30/18, Debtor shall either (A) file an amended Plan to otherwise provide for the allowed claim of the Mortgage Lender; or (B) Mortgage Lender may seek relief from the automatic stay with regard to the collateral and Debtor will not oppose it.

(Plan §7(d)) (Doc. # 44).[3]

On October 3, 2019, HSBC filed a proof of claim asserting a claim in the amount of $980,883.99, with prepetition arrears of $439,918.20, secured by a mortgage on the Property.[4]

On December 18, 2018, after the expiration of the loan modification deadline set in the initial chapter 13 plan, HSBC filed the Motion. In the Motion, HSBC asserted that "cause" exists for stay relief because the Debtor failed to make post-petition instalment payments on the

---

[2] As one court observed, a request that a creditor agree to a loan modification is, in effect, a request for a novation of the original loan agreement. See In re Larkin, 553 B.R. 428, 437 (Bankr. D. Kan. 2016).

[3] This is the Debtor's second chapter 13 bankruptcy case.

In her prior case, filed on November 16, 2017, she filed a plan proposing to cure her pre-petition delinquency (which she described as $216,161.92) through her plan payments while maintaining current contractual payments. (See Plan §3.1) (Bky. No. 17-17825, Doc. # 28). Subsequently, HSBC filed a proof of claim asserting a claim for pre-petition arrears of $388,009.19. (Bky. No. 17-17825, Claim No. 2).

On March 6, 2018, HSBC filed a motion for relief from the automatic stay alleging that the Debtor failed to make any post-petition mortgage payments. (HSBC Motion ¶ 8) (Bky. No. 17-17825, Doc. # 46). Before that motion was resolved, the bankruptcy case was dismissed. (Bky. No. 17-17825, Doc. # 54). The Chapter 13 Trustee's Final Report states that the Debtor made no plan payments while the case was pending. (Bky. No. 17-17825, Doc. # 56).

[4] On March 5, 2019, more than two (2) months after HSBC filed the Motion presently under consideration, the Debtor objected to HSBC's proof of claim, contending that neither HSBC nor Wells Fargo holds the note and therefore that both entities lack standing.

loan secured by the mortgage on the Property.

On January 14, 2019, after HSBC filed a certification that there was no response to the Motion, the Debtor filed an untimely response, denying that she failed to make post-petition payments. (Debtor's Response to Motion ¶8) (Doc. # 62).[5] In the response, the Debtor also contends that HSBC is not the holder of the underlying promissory note and is not the creditor to whom the debt is due. (Id. ¶¶ 5, 10).

On March 5, 2019 and March 26, 2019, the Debtor filed an Amended Plan and Second Amended Plan. (Doc. #'s 77, 89). Both amended plans deleted the loan modification provision previously set forth in the initial plan. In fact, both amended plans make no reference at all to HSBC or Wells Fargo.

**B.**

At a hearing on the Motion held on March 5, 2019,[6] the Debtor conceded that she has not entered into a loan modification agreement and that she has not made all of the monthly payments falling due on mortgage loan. She continued to maintain, however, based on what she deems as HSBC's conflicting statements regarding its possession of the underlying note made in this court and in prior state court state court proceedings, that HSBC may not have possession of the underlying note and therefore, is not the creditor with the authority to collect the subject

---

[5] HSBC did not make an issue of the untimeliness of the response.

[6] By agreement of the parties, the hearing on the Motion, initially scheduled on January 15, 2019, was continued twice prior to the March 5, 2019 hearing.

loan.[7] Consequently, the Debtor asserted that the court should hold an evidentiary hearing at which HSBC should be required to establish its standing to prosecute the Motion.

HSBC's position was that if an evidentiary hearing were necessary, the March 5, 2019 hearing should be continued further to give HSBC the opportunity to bring out-of-town witnesses to court. The Debtor had no objection to this and the March 5, 2019 hearing was continued to April 30, 2019.

However, the new hearing date was scheduled subject to a further determination as to its necessity. At the March 5, 2019 hearing, the Debtor also conceded, that HSBC holds a pre-petition judgment in mortgage foreclosure against her and the Property. The judgment was entered by consent on June 30, 2015 in the Court of Common Pleas, Delaware County, at No. 2012-000866.[8]

The Debtor argued that the existence of the judgment did not conclusively establish HSBC's standing. Of course, HSBC disagreed. In its view, the existence of the judgment established its standing and no further hearing on the issue was necessary. As a result, I gave the parties the opportunity to submit memoranda on the issue whether HSBC's standing to prosecute a motion for relief from the automatic stay under 11 U.S.C. §362(d) was established by the entry of the pre-petition foreclosure judgment in its favor.

---

[7] The Debtor points to the fact that HSBC attached a "lost note" affidavit to the proof of claim it filed in this court which states that "[s]ince 03/10/2015, the subject Note has been inadvertently lost, misplaced or destroyed." Yet, according to the Debtor's counsel, in the state court foreclosure proceeding, HSBC's counsel advised the Debtor's state court counsel, by e-mail on March 13, 2015 that the original note would be available at trial.

[8] According to the consent judgment, the Debtor agreed to the entry of judgment in return for HSBC's agreement not to file a writ of execution on the judgment until December 1, 2015.

The last of the parties' respective memoranda was filed on March 27, 2019. The issue is ready for decision.

### III. DISCUSSION

#### A.

11 U.S.C. §362(d)(1) provides that the automatic stay may be terminated upon request of a party in interest "for cause, including the lack of adequate protection of an interest in property of [a] party in interest."

Based on the undisputed facts, (and assuming, for the moment, that HSBC has standing), HSBC is entitled to relief from the automatic stay under §362(d)(1) for two (2) independent reasons.

First, the Debtor has not made post-petition monthly payments under the mortgage note and has not proposed any other means of adequately protecting HSBC's interest in the secured property.

It is well established that evidence of a debtor's post-petition default in mortgage payments meets a mortgagee's initial burden of production in establishing "cause" for relief. The burden then shifts to the debtor to rebut the creditor's prima facie case, such as by establishing that the creditor's interest is "adequately protected." E.g., In re Stuart, 402 B.R. 111, 122 (Bankr. E.D. Pa. 2009) (citing cases); see also In re Heath, 79 B.R. 616, 618 (Bankr. E.D. Pa. 1987).

Here, the Debtor neither made post-petition instalment payments on the mortgage note nor proposed to provide adequate protection to HSBC in any other way. Her current, proposed chapter 13 plan makes no reference to the subject secured debt. Nor has she proposed to provide

HSBC with some form of adequate protection in her response to the Motion. Thus, she has not rebutted HSBC's prima facie case and cause exists to grant relief from the automatic stay. E.g., In re Jones, 284 B.R. 92, 98 (Bankr. E.D. Pa. 2002), aff'd, 308 B.R. 223 (E.D. Pa. 2003); In re Wright, Egan & Assocs., 60 B.R. 806, 807 (Bankr. E.D. Pa. 1986).

Second, the Debtor's filing amended chapter 13 plan that does not provide for the subject secured debt also establishes a prima facie case for relief from the automatic stay. See, e.g., In re Thorpe, 2019 WL 262197, at *6 (Bankr. E.D. Pa. Jan. 17, 2019) (citing cases) (as a general rule, if the holder of a secured claim is not provided for in a chapter 13 plan, the creditor is entitled to relief from the automatic stay under §362(d)).

**B.**

The Debtor does not specifically contest HSBC's contention that cause exists for stay relief. Rather, her sole defense to the Motion is that HSBC lacks standing to obtain judicial relief from this court.

In In re Alcide, 450 B.R. 526 (Bankr. E.D. Pa. 2011), I analyzed, at some length, the legal principles governing the determination whether a party has standing to obtain relief from the automatic stay to enforce a claim secured by a mortgage against a debtor's property. Those key principles are:

- a party must have some legally protected interest that either has been adversely affected (thereby warranting judicial relief) or that is in actual danger of being adversely affected (if relief is not granted); and

- to have the "legally protected interest" that makes a moving creditor asserting mortgagee status a "party in interest," the movant must be the party that has authority to enforce the mortgage under applicable nonbankruptcy law.

-7-

450 B.R. at 536-37.

I summarized the standing issue in stay relief motions as follows:

> Reduced to its essence, to establish its status as a party in interest entitled to seek relief from the automatic stay under 11 U.S.C. § 362(d) in order to enforce legal remedies for a default under a mortgage, a mortgage servicer must demonstrate that:
> 
> > (1) the initiation of the stay relief motion in the bankruptcy court is within the scope of authority delegated to the servicer by its principal and
> > 
> > (2) the principal itself is a party in interest (i.e., its principal is a party with the right to enforce the mortgage).

Id. at 539.

In Alcide, I denied the motion for relief because the movant, which was the mortgagee's servicer rather than the mortgage holder, failed to establish that enforcement of the mortgage through foreclosure proceedings was within the scope of its servicing agreement with the mortgage holder.  Id.

In the present matter, the movant, HSBC, is not a mortgage servicer, but the mortgage holder itself.  HSBC is the trustee for what appears to be a securitized trust that holds the beneficial interest in the subject mortgage (while HSBC holds the legal interest in the mortgage).  Thus, to have standing, HSBC need establish only that it has the right to enforce the mortgage under Pennsylvania law.

### C.

In Pennsylvania, the purpose of the legal proceeding known as an action in mortgage foreclosure, is to determine whether a creditor secured by a mortgage may realize its collateral by

subjecting the secured property to sheriff's sale. See, e.g., Nicholas v. Hofmann, 158 A.3d 675, 696 (Pa. Super. Ct. 2017);New York Guardian Mortg. Corp. v. Dietzel, 524 A.2d 951, 953 (Pa. Super. Ct. 1987).

The Debtor's defense fails because there can be no better proof of a party's right to enforce a mortgage on Pennsylvania real property than the existence of a Pennsylvania state court judgment in its favor in an action in mortgage foreclosure.

In her effort to evade the consequences of the entry of the foreclosure judgment, i.e., the binding determination by the state court that HSBC has the right to enforce the subject mortgage by sheriff's sale, the Debtor argues that "a consent judgment, entered privately without court participation, is not a judgment on equal footing as that entered by a tribunal following a contested matter." (Debtor's Memorandum at 3).  The Debtor suggests that a judgment entered by consent is little more than a private contract that does not bind the court in later litigation between the parties.

I disagree.  The Debtor's argument is based on a selective reading of the case law.

The Debtor contention that a consent judgment is treated as a contract is only partially correct.  A consent judgment may be considered as a contract, but only for the purpose of interpreting its meaning when its text gives rise to a dispute concerning its scope and effect.  In other words, contract principles are applied to determine the meaning of an ambiguous consent order.  See In re Lipitor Antitrust Litig., 868 F.3d 231, 265 (3rd Cir. 2017); John Deere Co. v. Haverlak, 2009 WL 3806709, at *2 (M.D. Pa. Nov. 12, 2009).   But, whatever the order is determined to mean, the judgment is binding on the parties. See In re 19-21 N. George, Inc., 2011 WL 1841556, at *5 (Bankr. M.D. Pa. May 13, 2011) (a judgment entered by consent of the

parties is res judicata to the same extent as a judgment entered after trial). This is not surprising when one considers that the law generally treats both contracts and court judgments as binding on the parties.

In this case, there is no need to consider principles of contract construction. The consent judgment is not an order that placed affirmative duties on the parties that might be subject to interpretation (other than HSBC's duty to forbear from executing on the judgment until December 1, 2015, which is not an issue in this stay relief motion). There is no ambiguity regarding the meaning of the consent judgment and the Debtor has not suggested otherwise.

A judgment by consent is a fully effective court judgment that binds the parties, has res judicata effect and precludes further litigation of the subject claim in the litigation. See, e.g., Arizona v. California, 530 U.S. 392, 414 (2000); U.S. ex rel. U.S. Glass, Inc. v. Patterson, 2013 WL 6536448, at *3 (E.D. Pa. Dec. 12, 2013); Matternas v. Stehman, 642 A.2d 1120, 1123 (Pa. Super. Ct. 1994).[9]

In the foreclosure action, the Debtor could have defended against HSBC's right to foreclose based on the same theory she now presents to this court, i.e., that HSBC lacks possession of the note and may not foreclose on the Property. See JP Morgan Chase Bank, N.A. v. Murray, 63 A.3d 1258, 1268 (Pa. Super. Ct. 2013). But, instead, she consented to the entry of judgment in HSBC's favor. As stated earlier, the entry of the judgment in the pre-petition foreclosure conclusively determined that HSBC was entitled to foreclose on the Property.

The doctrine of res judicata applies here. A final judgment on the merits of an action

---

[9] These authorities also recognize, however, that a consent judgment does not have collateral estoppel effect on issues not actually litigated by the parties prior to the entry of the consent judgment.

precludes the parties or their privies from relitigating defenses that were or could have been raised in the prior action. J.G. Wentworth & Company, Inc., 761 A.2d 159, 162 (Pa. Super. Ct. 2000); In re Main, Inc., 1999 WL 689715, at *3 (E.D. Pa. Sept. 3, 1999); accord In re Stevenson, 40 A.3d 1212, 1222 (Pa. 2012); In re Wilkinsburg Taxpayers & Residents Interest in Green St. Park Sale to a Private Developer & Other Park-Sys. Conditions, 200 A.3d 634, 640 (Pa. Commw. Ct. 2018); Vacation Charters, Ltd. v. Textron Fin. Corp., 2016 WL 354094, at *11 (M.D. Pa. Jan. 28, 2016); Williams v. Philadelphia Hous. Auth., 1996 WL 14430, at *3 (E.D. Pa. Mar. 29, 1996); In re Randall, 358 B.R. 145, 166 (Bankr. E.D. Pa. 2006).

Having by consented to the entry of the foreclosure judgment in state court, the Debtor conceded that HSBC has the right to foreclose on the subject mortgage. She cannot relitigate the issue in this court.[10]

---

[10] HSBC also argues that the challenge to its standing should be rejected based on the Rooker-Feldman doctrine. I address the question briefly because the argument questions the subject matter jurisdiction of this court. I find the Rooker-Feldman doctrine inapplicable.

The Rooker-Feldman doctrine deprives a federal court from hearing an affirmative claim filed by a party that has lost on that claim in prior state court litigation and is suing for relief in federal court. But a debtor defending a stay relief motion is not a party who lost in state court then filing an affirmative suit for relief in federal court. Here, the Debtor was the defendant in state court and is the respondent to the motion filed in federal court.

Further, It is difficult to conceptualize the notion that the bankruptcy court lacks jurisdiction to consider a defense raised to a request for relief under 11 U.S.C. §362(d), a contested matter that is within its core jurisdiction. See 28 U.S.C. §157(b)(2)(G). The Debtor is simply raising a defense that is precluded because it was a defense in the foreclosure action that resulted in the entry of judgment against the Debtor.

The appropriate doctrine to apply is res judicata, not Rooker-Feldman. See In re Razzi, 533 B.R. 469, 478 (Bankr. E.D. Pa. 2015) (objection to proof of claim based on defense that could have been raised prior to entry of state court judgment lacks merit based on res judicata, not Rooker-Feldman).

## IV.  CONCLUSION

As a matter of law, HSBC's status as the judgment holder is sufficient to confer standing under 11 U.S.C. §362(d) to seek relief from the automatic stay to enforce its judgment in mortgage foreclosure. The Debtor did not raise any other defense. Therefore, the Motion will be granted.  If the Debtor believes that HSBC lacks the power to enforce the mortgage because it lacks possession of the underlying note and the entry of the foreclosure judgment was improper, she must press that issue in the court that entered the judgment.

An appropriate order follows.

**Date: April 4, 2019**

　　　　　　　　　　　　　　　　　　**ERIC L. FRANK**
　　　　　　　　　　　　　　　　　　**U.S. BANKRUPTCY JUDGE**